UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

L.A. INSURANCE AGENCY
FRANCHISING, LLC,

               Plaintiff,                        Civil Action No. 14-14432
                                               Magistrate Judge David R. Grand

v.

CLAUDIA MONTES, et al.,

               Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF [127] AND DISMISSING DEFENDANTS' COUNTERCLAIMS AND DEFENSES BASED ON THEIR ARGUMENT THAT THE FRANCHISE AGREEMENTS' INDEMNITY PROVISION RENDERS THEM UNENFORCEABLE DUE TO A LACK OF MUTUALITY

As the growing docket in this case reflects, the Court has written extensively on various substantive and procedural issues raised by both sides of this franchise dispute. Recent factual developments in this case, and a legal argument raised by Defendants – that an indemnity provision in the parties' franchise agreements renders them unenforceable due to a lack of mutuality – suggest that at least certain of the Court's prior rulings merit further consideration.

Defendants aptly describe the franchise agreements' enforceability as "a determinative issue in this case," and recognize that the "consequences of enforcing the Agreements are dire for Defendants. If the Agreements are enforced, L.A. Insurance can rely upon the non-competition clause to bring Defendants' businesses to a close." (Doc. #127 at 7-8). While this somewhat piecemeal Order represents an unusual step, "[g]iven the importance of this issue,"[1]

---

[1] The Court agrees that the franchise agreements' enforceability is a critical issue to the ultimate resolution of this action. Accordingly, although Defendants should have presented all of their arguments in support of their position in their prior filings, it will grant their motion for leave to

(*id.* at 7), it makes sense for the Court to decide the matter now while it is considering the impact the recent factual developments may have on prior rulings in this case and on L.A. Insurance's pending Motion for Summary Judgment.  (Doc. #117).

As more facts have been presented to the Court, and the legal issues have come into greater focus, it has become increasingly clear that this is not a case of a "modern day Rosa Parks," as Defendants' counsel once characterized it.  Rather, it is a fairly straightforward franchise dispute between a franchisor, Plaintiff L.A. Insurance ("L.A. Insurance"), and its franchisee, Defendant Claudia Montes ("Montes") (and her Defendant franchises (collectively, "Defendants")), who recently testified during her deposition that she never read many of the key documents in this case (including the various franchise agreements and many of the affidavits she submitted to the Court in this litigation) before signing them because she doesn't "like reading" and because she is "pretty trusting."  (Doc. #117-4, "Montes Dep." at 32, 63, 72, 75-76, 98, 180).

Even more concerning to the Court than Montes' lackadaisical approach to executing important business and legal documents, are her recent admissions that, in opposing L.A. Insurance's prior requests for certain relief, she provided the Court with false information and testimony.  For instance, after having previously unequivocally testified in Court that she "never received the loan" that was to be part of the underlying transaction for her to acquire one of her L.A. Insurance franchises (Doc. #117-5 at 4), Montes admitted at her recent deposition that her prior testimony was untrue.  (Doc. #117-4, "Montes Dep." at 36, 69-70 ("I must have represented

_____

file a supplemental brief.  (Doc. #127).  For the reasons discussed below, however, Defendants' supplemental filing only further shows their strained and unsupportable interpretation of the contractual provisions in question, and that their mutuality argument lacks merit.

myself wrong in front of the Judge … I got a loan and I made payments …. Q.  So when you told the Judge that you never received a loan, that wasn't true?  A.  Correct."), 161).

Montes also disavowed many of her allegations challenging the very core of the L.A. Insurance franchise system.  In her amended complaint, Montes alleged that L.A. Insurance "offered no support at all to its franchises, not even offering MONTES a handbook of operating procedures to review," that L.A. Insurance "offered nothing of value to its franchisees, but instead siphoned money off of what were essentially small, independent businesses," and that "[e]ven though the Revised Franchise Agreement called for 'operational assistance,' 'training,' and 'operations manual,' and numerous other supposed support, MONTES never received any of it."  (Doc. #35-1, Amend. Comp., ¶¶13, 41-42).  Similarly, in an affidavit Montes supplied to the Court, she averred, "[L.A. Insurance] offered literally no support to its franchisees," and that its "franchise system offer[ed] nothing of substance, no support, no assistance, no procedures, no training, no advice, no resources, no manuals, no marketing, nothing."  (Doc. #35-1 at ¶¶89-90).  At her deposition, however, Montes admitted to receiving assistance in many of these respects from L.A. Insurance, and she expressly and unequivocally admitted these averments were untrue.  (Montes Dep. at 158-170, 184-88, 191, 197).[2]

---

[2] Montes attempted to rationalize a statement in one of her prior affidavits that she "received zero support from [L.A. Insurance]" by claiming that rather than a "lie," her statement "might be exaggerated" because she is "pretty dramatic so [she] might exaggerate."  (Montes Dep. at 158-59).  When pressed, however, Montes admitted that her prior affidavit statement "is not true." (*Id.* at 159).  Montes' cavalier attitude toward the truth, which seems consistent with her submission of affidavits to this Court that she never read, suggests a lack of respect for the challenging and voluminous work of the Court and the judicial process, including L.A. Insurance's right to have the parties' dispute decided based on the facts and evidence.  While the Court will always remain objective in its assessment of the relevant law and evidence presented in this matter, it is Montes who should "take a sober second review" (in her words, Doc. #127-2) of the manner in which she conducts herself professionally and as a litigant in this Court.  While the Court is still considering the impact on this case of the new evidence discussed herein, Montes is expressly warned that she may face contempt proceedings or other sanctions if she

Finally, one of the central themes of Montes' counterclaims and defenses is that she was "forced" by L.A. Insurance to execute the various franchise agreements. (*See e.g.*, Doc. #35-1 at ¶26; Doc. #77 at 21-23 ("These contracts were signed under duress … they came to me and they say, 'Well, it's time for you to buy us out. We're going to give you a loan to buy us out.' I never received the loan.[3] They just told me I have to give them payment of 9 percent interest and I had to come to Michigan to sign the contract…. It was either that or I lose my agencies.")). In a prior Order, the Court expressed some skepticism about how Montes could have been "forced" to sign "four different contracts over a five-year period of time." (Doc. #105 at 14). At least on the present record, that skepticism appears to have been well-founded. At her deposition, Montes specifically denied being forced to sign any of the franchise agreements. (Montes Dep. at 88, 90, 94, 96). Montes also admitted at her deposition that "every time we signed a contract we went out for – for dancing" (*id.* at 189-90), which is certainly a strange way to behave after purportedly having just been "forced" to sign an agreement. And, Montes admitted that she had been excited about starting the NV26 franchise agency in 2011, and had affixed a sticky-note to the executed NV26 franchise agreement in which she wrote, "We will celebrate this NV26 in the next six months." (*Id.* at 97-98).

After recently eliciting these admissions from Montes, L.A. Insurance filed a motion for summary judgment which is pending before the Court. (Doc. #117). However, rather than responding substantively to L.A. Insurance's arguments, Defendants simply asked for a wildly excessive amount of additional time (18 months, *see* Doc. #123-2 at ¶11) to complete discovery, and spent the bulk of their response arguing that the franchise agreements "are unenforceable

provides knowingly false information to the Court.

[3] As noted above, Montes has now admitted that she did, in fact, receive the loan.

because there is no mutuality of obligation between the parties." (Doc. #123 at 13). More specifically, Defendants contend that mutuality is lacking because the indemnity provisions in the parties' franchise agreements "completely and unambiguously exempt L.A. Insurance from liability…." (*Id.* at 16). From this argument, Defendants conclude that: (1) "L.A. Insurance's claims in its Amended Complaint [68] fail as a matter of law"; and (2) "L.A. Insurance will be unable to rely upon the [franchise agreements] to bar Defendants' Amended and Supplemental Counterclaims." (*Id.* at 21). For the reasons discussed below, however, Defendants' mutuality argument lacks merit.

## ANALYSIS

The law is clear that "[a]n indemnity contract is construed in the same manner as other contracts." *DaimlerChrysler Corp. v. G-Tech Professional Staffing, Inc.*, 260 Mich. App. 183, 185 (2003). This means that "an unambiguous written indemnity contract must be enforced according to the plain and ordinary meaning of the words used in the instrument." *Id.* Here, the salient contractual language in the parties' franchise agreements is clear and unambiguous. Each of those agreements provides that a "business operated under the [L.A. Insurance] Franchise System … will be referred to in this Agreement as an 'Agency.' The Agency operated by Franchisee under this Agreement will be referred to in this Agreement as the 'Business' or 'Franchise Business.'" (Docs. # 68-1, §1.1; 68-2, §1.1; 68-3, §1.1; 68-4, §1.1). The franchise agreements also contain the following "Indemnification" provision:

> Franchisee is responsible for all losses or damages from contractual liabilities to third persons from the possession, ownership and operation of the Franchise Business and all claims or demands for damages to property or for injury … of persons, directly or indirectly, arising out of, or in connection with, **possession, ownership or operation of the Franchise Business** or the actions or omissions of Franchisee. Franchisee must defend, indemnify and hold harmless the Franchisor … against any and all claims … which arise out of, in connection with, or as a result of

5

> **possession, ownership or operation of the Franchise Business** or the acts
> or omissions of Franchisee….

(Docs. #68-1, §8.15; 68-2, §8.14; 68-3, §8.14; 68-4, §8.15) (emphasis added) (the "Indemnification Provision").

While Defendants urge the Court to focus on aspects of the Indemnification Provision which are broad, such as "any and all claims," and "arising out of, in connection with, or as a result of" (Docs. #123 at 17; 127-2 at 5-6), they fail to conduct a complete analysis of the Provision.  The key question to be answered is:  "arising out of, in connection with, or as a result of" **what**?  The highlighted words above provide the answer to that question, and make clear that the Indemnification Provision does not "exempt L.A. Insurance from [any and all] liability." Defendants must indemnify L.A. Insurance only where a claim arises out of the "possession, ownership, or operation of the Franchise Business," and only Defendants "possess," "own," and "operate" the Franchise Business as that term is defined in the franchise agreements.

Defendants essentially ask the Court to construe the Indemnification Provision much more broadly than it actually reads by asking the Court to ignore the key qualifying language. Specifically, Defendants argue that a "claim **'in connection with' Defendants' agencies** would include a claim regarding L.A. Insurance's breach of [] the Agreements."  (Doc. #127-2 at 7) (emphasis added).  But again, the Indemnity Provision does not apply to claims "in connection with Defendants' agencies."  Rather, it applies much more narrowly to claims in connection with the **"possession, ownership or operation of** [Defendants' agencies]."  Defendants' need to write the highlighted language out of the Provision to make their argument proves the correctness of the Court's analysis.[4]

---

[4] In their supplemental brief, Defendants ask:  in light of the Indemnification Provision, "how can Defendants seek legal recourse against L.A. Insurance when it … [f]ails to perform material

The case of *Commercial Movie Rental, Inc. v. Larry Eagle, Inc.*, 738 F.Supp. 227 (W.D. Mich. 1989), on which Defendants rely, does not change the analysis.   While Defendants accurately recite the case's holding – "that Commercial Movie Rental, Inc. *was never bound* because it was 'exempt … for all liability for a breach of its obligations,'" (Doc. #127-2 at 8), they fail to note that the court so held because the indemnification provision at issue in that case provided that Commercial Movie Rental "shall not be liable for ... damages of any kind ... **on account of any ... event or cause whatsoever**."   *Commercial Movie*, 738 F.Supp. at 230 (emphasis added).   For the reasons stated above, the Indemnification Provision in the L.A. Insurance franchise agreements is completely different, much more narrow and specific, and cannot be read as exempting L.A. Insurance from all liability.[5]

## CONCLUSION

For the reasons stated above, the Indemnification Provision does not "exempt[] L.A. Insurance from all liability for any breach" committed by L.A. Insurance, as Defendants contend.

---

obligations under the Agreements…"?  (Doc. #127-2 at 2-3).  Defendants claim that they are "unable to seek legal recourse" for any violation by L.A. Insurance of its obligations under the franchise agreements because "L.A. Insurance can rely upon the Indemnification Clause for impunity."  (Doc. #127-2 at 3).  This argument gets Defendants nowhere.  As discussed above, the premise that the indemnification clauses "exempt L.A. Insurance from liability" is fatally flawed.  Alleged wrongful conduct of L.A. Insurance would not arise out of the "possession, ownership or operation **of the Franchise Business**."  Rather, it would arise out of the operation of L.A. Insurance's **own business** as franchisor.  Moreover, Defendants have brought multiple claims in which they allege that L.A. Insurance breached its obligations under the franchise agreements, and nowhere in L.A. Insurance's affirmative defenses or briefing has it argued that it is immune from such claims due to the Indemnification Provision.  To the contrary, and as Defendants recognize (Doc. #127-2 at 8), L.A. Insurance admits that it "had several obligations under the Franchise Agreements….  There is simply no provision that removes [L.A. Insurance] from all liability."  (Doc. #124 at 8).

[5] Defendants' argument that "a contract must be construed against the drafter, which, in this case, is L.A. Insurance" also lacks merit.  (Doc. #127-2 at 7).  As noted in *DaimlerChrysler*, 260 Mich. App. at 187, the "principle of construing an indemnity contract against the drafter, like any other contract, only applies where (1) an ambiguity exists and (2) all other means of construing the ambiguity have been exhausted."  No ambiguity exists here.

(Doc. #127-2 at 6).  The Indemnification Provision therefore cannot be a basis for finding the franchise agreements to be unenforceable due to a lack of mutuality.  Accordingly, all of Defendants' counterclaims and defenses based on this argument are DISMISSED.


Dated: August 19, 2016                          s/David R. Grand
Ann Arbor, Michigan                             DAVID R. GRAND
                                                United States Magistrate Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 19, 2016.


                                                s/Eddrey O. Butts
                                                EDDREY O. BUTTS
                                                Case Manager