UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

L.A. INSURANCE AGENCY
FRANCHISING, LLC,

      Plaintiff/Counter-Defendant,      Civil Action No. 14-14432
                                                    Magistrate Judge David R. Grand

v.

CLAUDIA MONTES, et al.,

      Defendants/Counter-Plaintiffs.
_____/

**OPINION AND ORDER DENYING L.A. INSURANCE'S MOTION
FOR SUMMARY JUDGMENT [117] WITHOUT PREJUDICE,
VACATING PRIOR RULINGS ON JURY TRIAL WAIVER PROVISION [86, 121],
AND STRIKING DEFENDANTS' JURY DEMAND**

      Before the Court is Plaintiff L.A. Insurance Agency Franchising, LLC's ("L.A. Insurance") Motion for Summary Judgment (Doc. #117). Defendants Claudia Montes ("Montes") and her four franchises (Defendants NV12, NV15, NV17, and NV26) (collectively "Defendants") filed a response to this motion under Rule 56(d) in which they asked for more time to conduct discovery into certain factual matters and raised a legal argument (which the Court has since rejected). (Docs. #123, #128). L.A. Insurance filed a reply. (Doc. #124).

      The Court and parties are very familiar with this action's extensive factual and procedural background, and the Court will not repeat it all here. For purposes of this Opinion and Order, the following brief factual recitation will suffice. Until their franchise relationship recently disintegrated, Montes was operating four separate L.A. Insurance franchises – Defendants NV12, NV15, NV17, and NV26 – pursuant to separate franchise agreements with franchisor L.A. Insurance. The franchise agreements covering these franchises indicate that they were executed

on May 14, 2009 (NV12 and NV15), September 14, 2009 (NV17), and February 22, 2011 (NV26). (Docs. #68-1 at 2, #68-2 at 2, #68-3 at 2, #68-4 at 2). Montes alleges that prior to the execution of the May 14, 2009 NV12 and NV15 franchise agreements, she operated those businesses pursuant to prior agreements/arrangements. Montes initially alleged that L.A. Insurance "forced her" to execute new franchise agreements without offering her new consideration by threatening that "[it] would somehow take away all of [Montes'] existing businesses if she failed to sign [new franchise agreements]…."[1] (Doc. #35-2 at ¶¶26-28). In its recent Opinion and Order, the Court discussed Montes' deposition testimony that L.A. Insurance did not "force" her to sign any of the parties' franchise agreements. (Doc. #128 at 4). Indeed, the Court noted that, "at least on the present record," Montes' testimony in this regard seemed to validate the Court's prior assessment of the significant hurdles she faced in this litigation. (*Id.*). At the same time, however, Montes has stood by her allegations that she was told she had to sign the new agreements or she would lose her L.A. Insurance businesses, and that (at least with respect to the NV12 and NV15 agreements), she had to fly to Michigan on short notice, and then was given only "as long as it took to sign whatever they gave [her]." (Doc. #117-4, "Montes Dep." at 61-62).[2] Montes has not yet had an opportunity to depose L.A. Insurance's principals regarding these matters. (Doc. #123-2 at 6).

---

[1] This presumably refers to the execution of the May 14, 2009 franchise agreements for NV12 and NV15, because Montes claims that she had been operating those since 2006 and 2007, respectively.

[2] The Court also notes that early in her deposition, Montes testified that she was "uncomfortable with the word 'Forced', because to me 'Forced' is pointing a gun at my head." (Montes Dep. at 33). While this does not change any of the Court's prior commentary on the challenges Defendants face in terms of ultimately prevailing on the issue, it does underscore the fact that the circumstances of the execution of the parties' agreements have not been sufficiently developed in the record for the Court to rule as a matter of law on the issue.

Other factual matters in controversy are also not fully developed. For instance, Montes alleges that L.A. Insurance signed her name to third-party contracts without her permission and that the contracts benefitted L.A. Insurance while disadvantaging Defendants. She further alleges that she was unaware of the very existence of at least some of these contracts. L.A. Insurance does not seem to deny signing Montes' name, but claims that Montes asked it to do so (apparently by asking it to obtain third-party carrier "codes" for her), knew it had done so, and benefitted from it doing so. Defendants also raise issues with respect to the opening and operation of a Toro Insurance Agency ("Toro NV6") directly across the street from Defendant NV26, and with L.A. Insurance's alleged involvement in getting third-party carriers to cut off business ties with Defendants. As discussed below, all of these issues require further factual development before they would be ripe for consideration at the summary judgment stage.[3]

**Summary Judgment Standard**

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists,

---

[3] L.A. Insurance contends that Defendants "have already conducted extensive discovery in this case and had ample time and opportunities to do so for the last 11 months." (Doc. #124 at 5). While it is true that at least some discovery has taken place during this period of time, this case has had numerous stops and starts, sometimes with the parties' agreement to put discovery on hold while the Court considered motions that were before it. At any rate, Defendants have specified certain additional discovery which they wish to take, and which goes directly to the issues discussed herein. (Doc. #123-2). The Court finds that a reasonably short additional 75-day discovery period will be more than sufficient to complete any remaining discovery in this action, and the Court entered today a Scheduling Order reflecting this period of additional discovery and setting other deadlines which will govern this case going forward.

the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

**Analysis**

L.A. Insurance argues that in light of the evidence it presented in its summary judgment motion, "it can no longer be disputed that the Franchise Agreements in this case are valid." (Doc. #117 at 40). L.A. Insurance asserts that all of the issues which turn on whether the agreements are enforceable (such as Defendants' counterclaims alleging violations of Nevada law, which cannot stand if the franchise agreements' Michigan choice of law provision applies, and L.A. Insurance's argument that provisions in the franchise agreements such as integration clauses and statute of limitations provisions bar certain of Defendants' claims) must be resolved in its favor. But, as the Court has repeatedly noted, although Defendants face an uphill battle as

4

to the franchise agreements' enforceability, many of the salient facts have not been sufficiently developed in the record for the Court to rule as a matter of law on that issue. Above, the Court explained its conclusion with respect to the need for additional factual development regarding the execution of the franchise agreements.[4] But other facts, too, are in need of further development before the Court can appropriately consider granting dispositive relief. Details need to be fleshed out regarding L.A. Insurance's signing of Montes' name to numerous third-party documents (without her permission, she alleges), and the impact, if any, of that conduct on Defendants' argument that the agreements benefitted L.A. Insurance while disadvantaging Defendants. Another area of needed discovery concerns L.A. Insurance's position as to the impact the Toro NV6 entity had on Montes' NV26. While L.A. Insurance provided the Court with certain Toro tax records which, on their face, certainly suggest that the placement of Toro NV6 directly across from NV26 did not have any meaningful financial impact on the latter (Doc.

---

[4] In denying without prejudice L.A. Insurance's motion to strike Defendants' jury demand, the Court had focused largely on Montes' allegations about the circumstances surrounding her execution of the franchise agreements for NV12 and NV15. (Docs. #86, #121 at 11). Although the evidence is presently insufficient for the Court to grant L.A. Insurance the dispositive relief it requests in its summary judgment motion, Montes' deposition testimony clearly raises serious questions about her allegations. (Doc. #128 at 4). Importantly, the same testimony also raises serious questions about Defendants' position that the franchise agreements for NV17 and NV26 are unenforceable. And, the Court recently ruled that Defendants' principal argument regarding the agreements' enforceability lacked merit. (Doc. #128). Taking these matters together, it would be unfair to the parties for them to work toward the completion of discovery in this matter with the presumption that any disputed issues of material fact will be tried to a jury, rather than as a bench trial, as is clearly and unambiguously provided for in the various franchise agreements. (Doc. #86 at 2 n.1) (quoting franchise agreements' jury trial waiver provision ("SUBJECT TO APPLICABLE STATE LAW, FRANCHISOR AND FRANCHISEE IRREVOCABLY WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER AT LAW OR IN EQUITY, BROUGHT BY EITHER OF THEM AGAINST THE OTHER….")). Accordingly, the Court's prior rulings on the jury trial waiver provision contained in the franchise agreements (Docs. #86, #121) are VACATED, Defendants' jury demand is STRICKEN, and any triable issues remaining after dispositive motions are ruled on will be by bench trial. This ruling does not alter the Court's analysis of the timeliness of Defendants' jury demand, though that issue is now moot in light of the foregoing.

#117-23), Defendants have not had a chance to take discovery on this matter. Therefore, they cannot be required to simply accept L.A. Insurance's proffered evidence. Similarly, L.A. Insurance has presented evidence which it contends disproves Defendants' assertions that the agreements L.A. Insurance negotiated for them were not as lucrative as the ones Defendants could have negotiated for themselves. (Doc. #117-21). But Defendants have not had an opportunity to take discovery, which could alter the factual landscape of this argument. More factual development is also warranted as to L.A. Insurance's contention that "Montes acknowledges that there is no evidence that [LA Insurance] improperly cut off Montes' access to insurance carriers; rather, her alleged injuries were self-inflicted." (Doc. #117 at 35). While it is true that L.A. Insurance has put forth evidence which, on its face, suggests that at least some third-party carriers cut ties with Defendants because of problems working with Montes and her agencies (Doc. #117-15), there are multiple problems with making a dispositive ruling based on this evidence alone. First, Defendants have not had a full opportunity to conduct discovery into the third-party evidence on which L.A. Insurance relies. Second, far from "acknowledging" the merit of L.A. Insurance's position, Defendants point the Court to at least a few instances in which it appears that third-party carriers ceased working with Defendants at L.A. Insurance's request. (Doc. #115-3). Once again, L.A. Insurance cannot put forth evidence and seek summary judgment without Defendants first having a fair opportunity to conduct discovery.[5]

L.A. Insurance's other legal arguments are ones it has made previously, and which the Court has rejected as premature. That remains the case. Once discovery is completed and the details on the issues discussed above have been fleshed out, the Court will be in a better position

---

[5] The Court cautions Montes that her presumption that these are matters that "[w]e'll talk about []  at trial," (Montes Dep. at 219), is misguided. As to any issue on which Defendants fail to present sufficient *evidence* to raise a material question of fact, there will be no trial.

to consider and rule on the merits of those issues.[6]

**Conclusion**

For the foregoing reasons, **IT IS ORDERED** that L.A. Insurance's Motion for Summary

---

[6] The Court has considered whether Montes' recent testimony, and the other affirmative evidence which L.A. Insurance has presented, is sufficient to merit entry of a preliminary injunction in L.A. Insurance's favor. Rule 65 of the Federal Rules of Civil Procedure allows a party to seek a preliminary injunction to protect itself from irreparable injury. Issuance of preliminary injunctive relief is committed to the sound discretion of the district court. *See Planned Parenthood Ass'n v. City of Cincinnati*, 822 F.2d 1390, 1393 (6th Cir. 1987); *Midwest Guaranty Bank v. Guaranty Bank*, 270 F.Supp.2d 900, 907 (E.D. Mich. 2003). In deciding whether to grant injunctive relief, the court considers four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689-90 (6th Cir. 2014). These factors are not prerequisites to the grant or denial of a preliminary injunction, but factors that must be carefully balanced by the district court in exercising its equitable powers. *Leary v. Daeschner*, 228 F.3d 729 (6th Cir. 2000). "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Therefore, a party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Newson v. Steele*, 2009 WL 4730456, at *3 (E.D. Mich. Dec. 8, 2009).

While it is a close call, the Court concludes that L.A. Insurance has not established the appropriateness of a preliminary injunction. Although the present evidence does suggest that L.A. Insurance has a substantial likelihood of success on the merits of this case, the Court has noted above numerous important factual details which are lacking in the present record, and which could have a significant impact on the ultimate resolution of this case. As far as irreparable harm to L.A. Insurance, the Court notes that Defendants are not using the L.A. Insurance marks, and L.A. Insurance itself has proffered evidence suggesting that Defendants are not much of a competitive threat; in fact, it appears that Montes has recently closed two of the businesses in question. (Doc. #117 at 39; Montes Dep. at 255-56). And, Defendants allege that L.A. Insurance has diverted to itself monies from third-party carriers that belong to Defendants. (Docs. #36, #36-1). These matters significantly mitigate (though do not eliminate) the potential harm to L.A. Insurance and its franchise system by the Court not granting a preliminary injunction at this time. On the other hand, granting the requested preliminary injunction would have the effect of essentially completely shutting down Montes' and Defendants' remaining businesses, which would impact employees, customers, and third-party contracts and vendors. Finally, the public interest factor does not weigh strongly in L.A. Insurance's favor considering that Defendants are not using its marks (and therefore likelihood of confusion is lacking) and that an injunction would harm Defendants' employees, customers, and third-party business relationships.

Judgment **(Doc. #117)** is **DENIED WITHOUT PREJUDICE**. **IT IS FURTHER ORDERED** that the Court's prior rulings on the jury trial waiver provision contained in the franchise agreements **(Docs. #86, #121)** are **VACATED**, Defendants' jury demand is **STRICKEN**, and any triable issues remaining after dispositive motions are ruled on will be by bench trial.

Dated: August 24, 2016                  s/David R. Grand
Ann Arbor, Michigan                  DAVID R. GRAND
                                                  United States Magistrate Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 24, 2016.

                                                  s/Eddrey O. Butts
                                                  EDDREY O. BUTTS
                                                  Case Manager